Argued November 23, reversed and remanded December 23, 1970

# STATE OF OREGON, *Respondent, v.*
# GARY LYNN BROTHERS,
## *Appellant.*
### 478 P2d 442

*J. Marvin Kuhn*, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

SCHWAB, C. J.

Defendant was charged with the crime of Second Degree Murder. Upon trial by jury, he was found guilty of involuntary manslaughter and was placed on probation for a period of five years.

Defendant's sole assignment of error on appeal is that the trial court erred in denying his motion to suppress evidence which defendant claims is the fruit of an illegal search.

On the night of August 28, 1969, Floyd Farley, Chief of Police of John Day, Oregon, was notified of the need for an ambulance at the apartment of the defendant, Gary Lynn Brothers. In his off-duty hours Chief Farley worked as a driver for a privately-owned ambulance service. It was in this latter capacity that he answered the call.

When Chief Farley arrived at the defendant's apartment he found defendant's wife, Clorene Brothers, lying on the living room floor with a wound in

her right arm. Mrs. Brothers was taken to the hospital and the defendant accompanied her.

Mrs. Brothers died at the hospital. Chief Farley stayed at the hospital and made several calls. One call was to Corporal Labhart of the Oregon State Police. Corporal Labhart arrived at the Brothers's apartment at 12:19 a.m., while Chief Farley was still at the hospital. Corporal Labhart found a key in the apartment and used it to lock the apartment door when he left. He then drove to the hospital and gave the key to Chief Farley.

At 1:30, Chief Farley left the hospital and went to the police station. He waited for a photographer and then accompanied him to the morgue where pictures were taken of the deceased. Chief Farley, the photographer, and another officer then returned to the defendant's apartment, arriving at 2:14 a.m.

Chief Farley testified that he went to the apartment to take photographs and to search for and seize evidence of a crime. He did not obtain a search warrant or the consent of the defendant before returning to the apartment. The defendant was not present at the search and was not arrested until two days after the search was made.

The apartment was locked when Chief Farley arrived, and he used the key Corporal Labhart had given him to gain entry. Once inside, the chief searched the defendant's living room, hallway, closet and bedroom. A rifle was found in a hallway closet. It was not in plain sight and the closet door was partially closed. A spent cartridge and clip were found on the living room floor.

Defendant made a motion to suppress the rifle, the results of any examination or test of the rifle,

photographs of portions of the interior of the defendant's home, a floor plan of the home of the defendant drawn by police officers and any descriptions of the interior of the apartment observed by the police.

Defendant's motion was denied because the trial judge decided that Chief Farley was an authorized deputy medical investigator appointed under ORS 146.420 (2), and that as an investigator he was authorized by ORS 146.450 to enter the Brothers's apartment and conduct the search without a warrant.

■ The evidence which the defendant sought to suppress played a crucial part in establishing the state's case. Defendant did not deny shooting his wife. Rather, he claimed that he had been cleaning the gun, which he believed to be unloaded, and had discharged it accidentally. At trial, the state introduced evidence, based on tests conducted with the seized rifle, which sought to demonstrate that the rifle could not be discharged accidentally. The evidence was illegally seized, and its admission was prejudicial error. The search and seizure was in violation of the defendant's constitutional rights. The Fourth Amendment to the United States Constitution states that:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Two opposing views have developed on the question of which of the Amendment's two clauses should be deemed controlling when applying the

Amendment's prohibitions to searches conducted without a warrant. One school of thought, which gave the Amendment's first clause primacy, became law when the United States Supreme Court decided *United States v. Rabinowitz*, 339 US 56, 70 S Ct 430, 94 L Ed 653 (1950). The court, in that case, said that the test for deciding whether a search without a warrant violated the Fourth Amendment was:

> "* * * [N]ot whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances — the total atmosphere of the case * * *." 339 US at 66.

In June of 1969, the Supreme Court overruled *Rabinowitz* in *Chimel v. California*, 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969), and restored the primacy of the Fourth Amendment's warrant clause. This court interpreted the new rule laid down in *Chimel* in *State v. Keith*, 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). In that case this court suggested that a policeman ask himself two questions before making a warrantless search:

> "(1) Do I have *probable cause* to believe that a search of the person or place in question will result in the finding of evidence of crime?
>
> "* * * * *
>
> "(2) Do I have *probable cause* to believe that I must immediately search without taking the time to seek and obtain a warrant: (a) in order to protect myself (or others in the immediate vicinity), or (b) in order to avoid the loss of evidence, or (c) in order to prevent the escape of the accused, or (d) for any other reason which outweighs the need for judicial surveillance over police activity which the search warrant provides?" 2 Or App at 142-43.

*Chimel* and *Keith* establish for the police the neces-

sity of obtaining a search warrant in all but exceptional cases. A search can no longer be justified by a finding that it was "reasonable."

In reaching a decision on the constitutionality of the search and seizure made by Chief Farley, we considered the questions posed in *Keith* in light of the facts of this particular case. It is obvious that the police did have probable cause to search defendant's apartment. A shooting had occurred there and it was logical to assume that a crime might have been committed and that evidence of that crime might still be on the premises.

It is equally clear, from a reading of the facts, that no special circumstances were present which would have permitted Chief Farley to dispense with the necessity of obtaining a warrant. The state has the burden of proof in hearings on motions to suppress when a search is made without a warrant. *State v. Elkins*, 245 Or 279, 292, 422 P2d 250 (1966). The state did not present any evidence to show that an attempt was made to contact a magistrate. The record does not disclose any evidence to support a contention that any evidence would have been lost if the police had taken the time to obtain a warrant. The record discloses no evidence to support a contention that an immediate search was necessary. The defendant was at the hospital and the defendant's apartment was locked. The police waited two-and-a-half hours before making the search.

The state cites *Stevens v. State*, 443 P2d 600, 601-03 (Alaska 1968), cert den 393 US 1039, 89 S Ct 662, 21 L Ed 2d 586 (1969), and *State v. Chapman*, 250 A2d 203, 204-12 (Maine 1969), to support its

contention that what really occurred was an interrupted search which started when Chief Farley responded to the call for an ambulance and ended with the contested seizure.

The *Chapman* case rests upon the rule for search and seizure laid down in *Rabinowitz*. *State v. Chapman*, supra, at 205. As previously pointed out, this rule is no longer the law. *Stevens* is inapplicable for different reasons. The murder in that case occurred in an isolated frontier village located on an island off the coast of Alaska. No magistrate was available and the local police officer was untrained. He called the state police who had to fly to the island from Juneau, without any clear information. These very unusual circumstances which justified the warrantless search in *Stevens* are not present in this case.

■ The state's final contention is that Chief Farley's warrantless search was justified, because he was acting in his capacity as a deputy medical investigator. The state claims that a warrantless search such as was conducted by Chief Farley was authorized by the medical examiner-statute, ORS 146.450.①

---

① ORS 146.450 provides:

"(1) The medical investigator or any of his deputies may enter any room, dwelling, building or other place in which the body or evidence of the circumstances of the death requiring investigation may be found.

"(2) To preserve evidence, the medical investigator or any of his deputies may take under their custody and close or lock any room, dwelling, building or other inclosure for a period of not more than five days.

"(3) If a death requiring investigation occurs in the open, the medical investigator or any of his deputies may rope off or otherwise specify any area in which they consider it necessary to preserve evidence.

This is an incorrect interpretation of the statute. Nowhere is the right to search mentioned. Chief Farley, if he was in fact acting as a deputy medical investigator, would have had the right to "preserve evidence" by closing or locking the apartment, but he could not search under authority of this statute.

Furthermore, to construe the statute as authorizing medical investigators to conduct warrantless searches would be to give it an unconstitutional construction. In *Camara v. Municipal Court*, 387 US 523, 87 S Ct 1727, 18 L Ed 2d 930 (1967), the United States Supreme Court decided that warrantless searches by "authorized employees" of San Francisco city agencies or departments for the purpose of checking on suspected violations of the housing code violated the Fourth Amendment. In doing so, the court stated:

"* * * [W]e hold that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, [and] that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual * * *." 387 US at 534.

Reversed and remanded.

---

"(4) The medical investigator or any of his deputies may forbid the entrance of any person, except peace officers and district attorneys, into the areas specified under subsection (2) or (3) of this section.

"(5) No unauthorized person shall trespass upon the areas specified in subsection (2) or (3) of this section."