Argued on review May 4, affirmed December 14, 1972
(Stay of mandate allowed by Supreme Court January 3, 1973)

STATE OF OREGON, *Respondent, v.* GEOFFREY
KEVIN VALENTINE and SCOTT MARLOW
DARROCH, *Petitioners.*

504 P2d 84

*Joseph P. Morray,* Corvallis, argued the cause for petitioners. With him on the briefs were Colley and Morray, Corvallis.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the

brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

DENECKE, J.

The issue is whether evidence should have been suppressed because it was allegedly obtained by officers entering premises without first knocking and announcing their presence and purpose.

The trial court denied defendants' motion to suppress the introduction of narcotics seized by the authorities. The defendants were convicted of the possession of narcotics. The Court of Appeals affirmed. *State v. Darroch*, 8 Or App 32, 492 P2d 308 (1971). We granted the petition for review.

A federal undercover agent purchased a small quantity of hashish from the defendant Valentine. Later, the agent negotiated with Valentine and the defendant Darroch to buy a large quantity of hashish. The agent was told to come at noon to the apartment shared by the defendants to make the purchase. Based upon the agent's information, a search warrant for the apartment was obtained and delivered to a Corvallis police officer. This officer and other law enforcement officers went to the vicinity of the apartment.

The undercover agent was admitted to the apartment and was shown a five-pound box of hashish. He said he would go back to his car and get the money. He went out and according to his testimony left the apartment door so it appeared closed but the latch did not catch so the door could be opened easily.

The undercover agent informed the other officers there was five pounds of hashish inside and gave

the signal to go in and arrest. One of the other officers, in plain clothes, pushed the door open and stepped inside with a drawn gun and announced he was a police officer. The other officers entered thereafter, including the one with the search warrant. Upon search the hashish, which was the subject of the motion to suppress, was found.

The state does not contend that the officers knocked or announced their presence by any means before they entered.

The defendants contend the entry was in violation of the Fourth and Fourteenth Amendments to the Federal Constitution, Art I, § 9 of the Oregon Constitution (unreasonable searches or seizures) and ORS 133.290.

We interpret *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed2d 726 (1963), as holding that an officer's failure to comply with the announcement requirement, when it is applicable, renders the ensuing search and seizure unreasonable and, therefore, in violation of the Fourth Amendment. The Oregon Court of Appeals in *State v. Gassner,* 6 Or App 452, 488 P2d 822, 824 (1971), similarly interpreted *Ker v. California,* supra (374 US 23).

The state contends that the entry was not in violation of the announcement requirement because the door was not latched and entry was obtained by ruse or subterfuge which is not in violation of the knock and announce rule. The Court of Appeals' opinion was based upon somewhat similar reasoning.

In order to determine the validity of these arguments it would be advantageous to know the reasons underlying the rule prohibiting unannounced entries, whether the rule be constitutional or statutory.

The only opinion in *Ker v. California,* supra (374 US 23), that states reasons for the constitutional announcement rule is the dissent of Mr. Justice Brennan. He stated: "Innocent citizens should not suffer the shock, fright or embarrassment attendant upon an unannounced police intrusion." 374 US at 57. The footnote to this statement elaborates:

"The importance of this consideration was aptly expressed long ago by Heath, J., in Ratcliffe v. Burton, 3 Bos & Pul 223, 230, 127 Eng Rep 123, 126-127 (1802):

" 'The law of England, which is founded on reason, never authorises such outrageous acts as the breaking open every door and lock in a man's house without any declaration of the authority under which it is done. Such conduct must tend to create fear and dismay, and breaches of the peace by provoking resistance. This doctrine would not not only be attended with great mischief to the persons against whom process is issued, but to other persons also, since it must equally hold good in cases of process upon escape, where the party has taken refuge in the house of a stranger. * * *.' " 374 US at 57.

In another part of the opinion Mr. Justice Brennan stated another purpose of the rule was "to minimize the hazards of the officers' dangerous calling." 374 US at 58.

In *Miller v. United States,* 357 US 301, 78 S Ct 1190, 2 L Ed2d 1332 (1958), the Court based its decision on its supervisory powers and not on the Constitution. It held that evidence had to be excluded because the entry by which the evidence was obtained was unlawful. Mr. Justice Brennan, for the majority, apparently believed the rule was rooted in "the rever-

ence of the law for the individual's right of privacy in his house." 357 US at 313.

*Sabbath v. United States,* 391 US 585, 88 S Ct 1755, 20 L Ed2d 828 (1968), also excluded evidence because it was seized after an unannounced entry. It, too, was based upon the court's supervisory power. The Court cited *Miller v. United States,* supra (357 US 301), to the effect that the rule is based upon the protection of a householder's right of privacy in his home and for the protection of law enforcement officers.

We consider it unlikely that the Court would exclude good evidence upon the constitutional ground that exclusion was the only feasible method of preventing police officers from endangering their lives by making unannounced entries.

The California court more fully articulated one of the reasons advanced by Mr. Justice Brennan in his dissent in *Ker v. California,* supra (374 US 23), as a basis for the requirement of an announced entry. "The statute reflects more than concern for the rights of those accused of crime. It serves to preclude violent resistance to unexplained entries and to protect the security of innocent persons who may also be present on premises where an arrest is made." *People v. Rosales,* 68 Cal2d 299, 66 Cal Rptr 1, 437 P2d 489, 492-493 (1968). Accord, *Greven v. Superior Court of County of Santa Clara,* 71 Cal2d 287, 78 Cal Rptr 504, 455 P2d 432, 436 (1969).

The Oregon Court of Appeals found the reasoning of the California court persuasive and stated:

"The requirement of announcement and refusal prior to forcible entry exists primarily for the purposes of avoiding unnecessary violence and de-

struction of evidence — and not solely for the protection of privacy. Privacy is usually otherwise adequately protected under the Fourth Amendment to the United States Constitution and Oregon Constitution, Art I, § 9. * * *." *State v. Mitchell,* 6 Or App 378, 383, 487 P2d 1156 (1971).

■■ To summarize, it appears that the announcement requirement has been given federal constitutional status (1) to protect persons who might be injured by violent resistance to unannounced entries by law enforcement officers, and (2) to protect the householder's right to privacy. This latter reason has been criticized, with some justification. Sonnenreich and Ebner, *No-knock and Nonsense, an Alleged Constitutional Problem,* 44 St John's L Rev 626, 647 (1970).

It must be remembered that the police officers have the right to enter after they announce their presence and purpose and, if entry is denied, they have the right to force entry. The only right of privacy protected by the announcement requirement is the right to know who is entering, why he is entering, and a few seconds to prepare for his entry.

The "ruse and subterfuge" decisions provide some insight into the prevailing judicial views on the basic purposes of the announced entry requirement.

*Leahy v. United States,* 272 F2d 487 (9th Cir 1960), was decided after *Miller v. United States,* supra (357 US 301). The facts in *Leahy* were that a federal revenue agent obtained an arrest warrant for defendant. The defendant was sought for evading a tax on wagering. The agent came to defendant's home and apparently knocked and stated he was an agent from the County Assessor's Office. Based upon this ruse, the agent gained admittance and got inside and

arrested defendant. The court held the entry did not violate the "knock and announce" provisions of 18 USCA § 3109 because there was no "breaking." The court further stated: "There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant." 272 F2d at 490. The court observed that the officers had reason to believe that if they tried to arrest the defendant before gaining entry, there might have been a gun battle endangering life.

Jones v. United States, 113 US App DC 14, 304 F2d 381 (DC Cir 1962), is not quite as clear. There, the officers had a search warrant for defendant's apartment. Defendant was suspected of the sale of narcotics. One of the officers knocked, the defendant said, "Who's there?"; the knocking officer said nothing; the defendant called out of the window to a "stranger" to call the janitor as there was someone at his door who would not go away. The "stranger" was another officer who got the janitor and had him knock on defendant's door. The defendant again asked who was there and the janitor replied, "the janitor." The defendant opened two of the locks and partly opened the door. The officer thrust his badge through the opening and said he had a search warrant. The defendant ran back through the apartment. The officer slipped off the night chain holding the door and entered and placed the defendant under arrest. A majority of the court, including then Judge Burger, held the entry was not contrary to 18 USC § 3109. The implication of the majority decision is that an entry is not unlawful if gained through "stealth or subterfuge."

The opinions in United States v. Beale, 436 F2d 573 (5th Cir 1971), rehr den 445 F2d 977 (5th Cir 1971), well illustrate how the "ruse and subterfuge" cases ex-

plain the prevailing views on the basic reasons for the announcement requirements. The facts were that the officers had a right to enter and arrest defendant, either by warrant or otherwise. The officers had a hotel manager knock on defendant's hotel room door and announce only the manager's presence. When the defendant opened the door, the officers entered and arrested him.

All the members of the panel agreed that the law before *Sabbath v. United States,* supra (391 US 585), was that an "entry secured by deception and without use of force" was not made unlawful by 18 USC § 3109, the federal knock and announce statute. The majority held:

> "Bearing all these considerations in mind, we are forced to the conclusion that *Sabbath,* by footnote 7, left undisturbed the existent distinction between entry where some force is employed and entry where force is not an element at all. We are not without doubts. The 'fundamental values' and 'on going development' to which *Sabbath* refers, 391 U.S. at 589, 88 S.Ct. 1755, include a broadening recognition of the citizen's right to privacy. Nevertheless we conclude that if entry by deception and wholly without application of force is to be brought within § 3109, it should be by the Supreme Court.

> "We do not view federal constitutional standards as requiring a different result. * * *." 445 F2d at 978.

Judge Tuttle dissented in the belief that the basic interest to be protected was the householder's right of privacy; therefore, it was immaterial whether the entry was made by ruse or by force:

> "If the basic principle is, as I deem it to be, 'the reverence of the law for the individual's right of privacy in his house,' then, it seems to me, that

we should not hesitate to apply what to me appears to be a clear and logical extension of the doctrine announced in *Sabbath*, * * *." 445 F2d at 979.

*United States v. Syler*, 430 F2d 68 (7th Cir 1970), also decided subsequent to *Sabbath v. United States*, supra (391 US 585), is in accord with the majority in *United States v. Beale*, supra (436 F2d 573).

The California courts, at least the Courts of Appeal, have also held that when an officer has a right to enter an unannounced entry gained by subterfuge is not unlawful. *People v. Scott*, 170 Cal App2d 446, 339 P2d 162, cert den 361 US 937, 80 S Ct 379, 4 L Ed2d 357 (1959); *People v. Superior Court for County of Los Angeles*, 5 Cal App3d 109, 84 Cal Rptr 778 (1970). The Ninth Circuit Court of Appeals so interpreted the California law. *Ponce v. Craven*, 409 F2d 621, 626 (9th Cir 1969):

> "It is clear from the language of section 844 that only if police resort to a breaking must they announce their purpose. The employment of a ruse which results in the occupant of a dwelling voluntarily opening the door and thereby allowing officers to enter without announcement of purpose, is not a breaking and, therefore, not violative of California arrest law. * * *."

The Oregon Court of Appeals has also previously held that an entry by stealth is not contrary to the announcement requirement. *State v. Monteith*, 4 Or App 90, 477 P2d 224 (1970).

The author in Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California*, 112 Pa L Rev 499, 516 (1964), was of the opinion that the "general rule" was that an entry to serve a lawful warrant gained by ruse or subterfuge was not unlawful.

He explains the significance of the "ruse and sub-terfuge cases":

> "The pragmatic difference between these two theoretical approaches is brought sharply to the fore by the entry-by-trick-absent-force situation. If the interest to be protected is the occupant's initial right voluntarily to relinquish his right to be let alone, then the dissenters in *Jones v. United States* have the best of the argument, and *Leahy v. United States* was wrongly decided. *Leahy,* of course, up-held outright misrepresentation; *Jones* upheld trick by implication. It is difficult to see how the dis-tinction between the two is meaningful. The entries in both cases were ultimately by ruse. Meaningful consent played no part. But if it was unnecessary force which was at issue, then it is hard to argue with the thrust of Judge Orr's opinion in *Leahy,* and such cases as *Gouled v. United States* are quickly placed in perspective. They involve ulti-mately questions going not to the manner of entry but the right to enter. When the right to enter exists, the manner of entry may be viewed in a different light. Ultimately, this is the burden of Judge Orr's opinion. So Justices Traynor and Weintraub likewise make clear in *Maddox* and *Smith.*" 112 Pa L Rev at 555.

The minority observed in *United States v. Beale,* supra (436 F2d 573), that if the invasion of a house-holder's right to privacy alone is sufficient to invoke the federal constitutional and statutory protection, an entry by ruse or subterfuge must be unconstitutional and unlawful. An entry gained by a law enforcement officer posing as a county tax assessor, a hotel manager or janitor invades a householder's right to be free from an immediate, unannounced entry by a law en-forcement officer, as much as a forced immediate entry by an unannounced law enforcement officer.

■ We have determined that in order for an otherwise

lawful search and seizure to be in violation of the Federal Constitution because of the method of entry, the entry must violate both the interest in protecting persons from the harm that could come to them from the possibility of violence occurring because of unexplained entries and the interest of householders in the privacy of their home. An intrusion of one interest but not the other is not of sufficient substance to invoke the constitutional protection.

■ The method of entry in the present case does not intrude upon both of these interests. The defendants' right to the privacy of their home was temporarily invaded. The defendants did not intend to admit law enforcement officers; they only intended to have the undercover agent return; however, this is legally similar to the householder who consented to entry believing he was a county tax assessor, a janitor or a hotel manager. However, in the present case, as in the "ruse and subterfuge" cases, the possibility of violence because of a forced, unexplained entry was not present.

The evidence was not the product of an unreasonable search and seizure and not secured in violation of the Federal Constitution.

■■ The defendants also contend the seizure was contrary to § 9, Art I, of the Oregon Constitution. Section 9 provides, in part: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." In interpreting the Oregon Constitution the decisions of the United States Supreme Court, of course, are not authoritative.

We are of the opinion that an otherwise lawful search and seizure accomplished by an entry which

was made without an announcement of presence and purpose is not an unreasonable search and seizure within the meaning of the Oregon Constitution. We reach this conclusion because of our opinion that the interest of the momentary protection of the privacy of the householder and the interest in protecting innocent persons from the violence that may stem from an unannounced entry are not of sufficient substance to rise to constitutional stature and require the exclusion of otherwise competent evidence.

The Oregon Court of Appeals was of a similar opinion. *State v. Gassner*, supra (6 Or App at 457). The court quoted from Sonnenreich and Ebner, supra (44 St John's L Rev at 646-647):

> "Proponents of a strict announcement requirement have created a constitutional certainty from a common-law uncertainty * * *. To elevate the announcement rule to a constitutional requirement in 1963 was probably historically unsound. To premise it upon a vague right of privacy, rather than on the avoidance of potential violence was a further departure from precedent. * * *."

■ The defendants also contend the entry was made contrary to the Oregon knock and announce statute, ORS 133.290.[1] Assuming, without in any way deciding, that the entry in this case was in violation of this statute, the evidence secured by such an entry is not to be excluded.

The reason for the federal rule excluding evidence obtained in violation of the Federal Constitution was

---

[1] ORS 133.290: "The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

settled in *Linkletter v. Walker,* 381 US 618, 85 S Ct 1731, 14 L Ed2d 601 (1965):

"* * * Mapp [Mapp v. Ohio, 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961)] had as its prime purpose the enforcement of the Fourth Amendment through the inclusion of the exclusionary rule within its rights. This, it was found, was the only effective deterrent to lawless police action. Indeed, all of the cases since *Wolf* [Wolf v. Colorado, 338 US 25, 69 S Ct 1359, 93 L Ed 1782 (1949)] requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. * * *.

"* * * In rejecting the *Wolf* doctrine as to the exclusionary rule the purpose was to deter the lawless action of the police and to effectively enforce the Fourth Amendment. * * *." 381 US at 636-637.

After years of the exclusionary rule some thoughtful observers are doubtful that the exclusionary rule has accomplished its purpose, and even more doubtful whether the cost brought about by excluding good evidence was worth the goal. Burger, *Who Will Watch the Watchman?,* 14 Am U L Rev 1 (1964); Wright, *Must the Criminal Go Free if the Constable Blunders?,* 50 Tex L Rev 736, 741 (1972); Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 Chi L Rev 665 (1970).

There is no evidence in the record or of which we can take judicial notice that law enforcement officers of Oregon are perniciously disobeying the knock and announce statute. On the contrary, police self-interest should dissuade police from making entries in violation of the statute. The United States Supreme Court, as previously stated, has reasoned on several occasions that one reason for the announcement requirement is

to avoid the hazard to law enforcement officers that accompanies an unannounced forcible entry. *Sabbath v. United States,* supra (391 US 585), and Mr. Justice Brennan's dissent in *Ker v. California,* supra (374 US at 46).

This court in *State v. Laundy,* 103 Or 443, 494, 204 P 958, 206 P 290 (1922), adopted the principle that evidence secured in violation of Art I, § 9, of the Oregon Constitution would be excluded from evidence. We were not bound by the decisions of the United States Supreme Court; however, we chose to follow *Weeks v. United States,* 232 US 383, 34 S Ct 341, 58 L Ed 652, LRA 1915B 834, AC 15C 1177 (1914), and exclude evidence seized in violation of the search and seizure provision of the Oregon Constitution.

We have never excluded evidence because it was obtained in violation of a statute, as contrasted with a violation of the Federal or State Constitutions. In *State v. Shipley,* 232 Or 354, 360-362, 375 P2d 237 (1962), a majority of this court refused to exclude a confession although it had been obtained as a result of a detention which was admittedly in violation of ORS 133.550. That statute requires an arresting officer to take his prisoner before a magistrate without delay. The magistrate must inform the prisoner of his right to the aid of counsel before any further proceedings are had. ORS 133.610.

In addition to these specific reasons why the evidence should not be excluded, we stated a general policy:

"* * * [W]e continue to regard a trial as a search for the truth and, therefore, competent evidence should never be excluded except for the most compelling reason. * * *." *State Forester v. Ump-*

*qua River Navigation Co.,* 258 Or 10, 26, 478 P2d 631, 639 (1970).

Affirmed.

O'CONNELL, C.J., dissenting.

Although I have some difficulty in seeing the knock and announce rule as having constitutional proportions, the U. S. Supreme Court has so evaluated it and therefore I must start with that premise.

The premise, stated broadly, is that the requirement of the Fourth Amendment that a search be reasonable is not met unless the officer making the search first knock and then announce his authority and purpose. Since the rule is derived from the Fourth Amendment it necessarily must be explained in terms of the interest of privacy which the amendment purports to protect. Armed with a valid warrant the officer is privileged to invade the occupant's enclave of privacy once a proper entry is made. However, at the threshold of the entry the officer must make his presence and mission known so that he does not make the encounter with the occupant any more offensive to his dignity than is necessary. If this is the interest the courts are charged with protecting, I do not see how it can be said that the requirement of knocking and announcing can be obviated through ruse, subterfuge or deception, as some of the cases cited in the principal opinion have held.

It is strange doctrine to say that a man has a right to know who seeks entry to his home, unless he can be cheated out of it by the agents of government. In circumstances where the officer's safety would be endangered by an announcement of his purpose, he should be permitted to enter without making it. But

short of that, the occupant should be entitled to have warning of the nature of the business which brings the visitor to his door. It may be argued that this treats too delicately the owner's interest in privacy. If this is so, then there is no reason to give the knock and announce rule constitutional status. But as long as we bring the rule under the Fourth Amendment it should be applied consistent with the purpose it is intended to serve.

Even if the ruse exception were to be recognized by us, the facts in the present case do not bring it within the exception. The officers who entered after Holm had departed did not gain entrance as a result of anything that had any relation to Holm's departure. Tested by any theory advanced for the knock and announce rule, the entry made by the officers in this case was no different than if Holm had never left the room.

Even if the rule is regarded as being founded in part upon the theory that it will tend to avoid unnecessary violence, the circumstances of entry in the present case created as much danger as if Holm had not taken part in the episode.

I wish to incorporate in this opinion the dissenting opinion of Judge FORT when this case was decided in the Court of Appeals.

McALLISTER, J., joins in this dissent.