Argued February 22, reversed and remanded for
new trial for manslaughter May 21, reconsideration
denied August 14, petition for review denied September 18,
1979, 287 Or 409

STATE OF OREGON, *Respondent,*
*v.*
BARBARA IRENE EACRET, *Appellant.*
(No. 77-3025-C-3, CA 11395)

595 P2d 490

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

James M. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

TANZER, J.

### TANZER, J.

Defendant appeals from her conviction of first-degree manslaughter of her husband. She assigns as error the denial of her motion to suppress evidence seized from her residence without a warrant and the admission of testimony that she made certain threats to others. We reverse and remand for a new trial because several items of evidence admitted at the trial were seized without a warrant in violation of the Fourth Amendment to the United States Constitution and Article I, § 9 of the Oregon Constitution.

On November 23, 1977, at approximately 5:30 p.m., police officers in the city of Medford received a report of a shooting at defendant's residence. When the first officer arrived, defendant was standing in the doorway of her residence and directed the officer to her husband's dead body lying in the hallway inside the house. Other officers arrived. Defendant repeated several times, "I shot him, I had to shoot him." One officer asked where the gun was, and she pointed toward the bedroom. She was twice advised of her *Miranda* rights and stated that she wished to talk to her attorney. The officers did not question her further, except to ask again where the gun was; she responded that it was under the mattress in the master bedroom. The officers then found it there, but did not seize it.

The investigation on November 23 continued for several hours. During that time, officers took several photographs and observed numerous items of evidentiary value in plain view inside the house, but nothing except the body of the decedent was removed that day. At approximately 9:45 p.m., the police left the scene of the homicide. One officer stayed in the house to stand guard until the next day, and he was relieved by other officers during the night and following morning. No one else remained in the house.

After noon on the next day, November 24, several officers returned to the house to resume their investigation. They had no search warrant and, so far as the

transcript shows, had not attempted to obtain one. They took additional photographs and seized a number of items from the bedroom where the shooting occurred, including a bullet from the floor, the gun from under the mattress, a bedspread, two beer bottles, a ceiling panel showing an impact point of the bullet found on the floor, and a revolver and four rifles from the bedroom closet. The bullet, two handguns, the ceiling panel and numerous photographs were among the state's exhibits received at defendant's trial.

A search or seizure without a warrant is per se constitutionally unreasonable, subject only to a few well-delineated exceptions. *Mincey v. Arizona,* 437 US 385, 98 S Ct 2408, 57 L Ed 2d 290, 298-99 (1978). To justify a warrantless search or seizure, the state must prove there was probable cause to believe that the search would disclose the fruits or incriminating evidence of crime and that exigent circumstances outweighed the need for judicial predetermination of probable cause. *State v. Matsen,* 38 Or App 7, 9-10, 588 P2d 1284 *rev allowed* (1979); *State v. Basler,* 24 Or App 723, 727, 546 P2d 1084 *rev den* (1976). Here, the officers had probable cause to search; the only question is whether there were exigent circumstances justifying the failure to obtain a warrant.

The police began their investigation in this case immediately after the homicide on November 23. The initial phase of investigation ceased that evening; the officer who remained at the house was assigned to guard, not to investigate, the scene of the homicide. The officers returned the following day after noon to resume the investigation. While law enforcement officers are not necessarily required to seek a warrant during the course of a continuous investigation, *State v. Basler,* 24 Or App at 728, each phase of an investigation that is not one continuous transaction must be analyzed separately. *State v. Allen/Reed,* 12 Or App 633, 637-39, 508 P2d 472 (1973). Here, the investigations of November 23 and 24 were distinct,

[344]

having been interrupted by over 14 hours during which there was no search for evidence or causes of the homicide. Thus each investigation must be assessed separately.

■ The first phase was lawful. When the police arrived at defendant's residence immediately after the homicide, defendant directed them inside to the victim's body. They were properly concerned about the location of the homicide weapon, the safety of everyone present, and the preservation of evidence. Under those circumstances, it would be unreasonable to delay investigation until a warrant could be obtained. The need to protect evidence from destruction, take the defendant into custody and arrange for the care of her children constituted exigent circumstances justifying the officers' presence at the scene and an immediate investigation of the crime.[1] Being lawfully on the premises, the officers were entitled to photograph and seize evidence in plain view. *State v. Corbin,* 22 Or App 505, 508-509, 539 P2d 1113 *rev den* (1975). However, only the victim's body was seized on the day of the homicide, and only some of the photographs admitted at trial were taken then.

■ The second phase was not based upon exigent circumstances. By 9:45 p.m. on November 23, the defendant, her children, and the victim's body had been removed from the house, the officers were satisfied that no further search for evidence was immediately necessary, and the house was secured by posting an officer to guard it until the next day. At that point, the exigent circumstances justifying the initial warrantless intrusion no longer existed. The initial exigencies did not carry over to the second phase of the investigation. *See State v. Brothers,* 4 Or App 253, 258-59, 478 P2d 442 (1970). Regarding a similar

---

[1] Because exigent circumstances justified the intrusion of November 23, we do not consider whether defendant's directing the officers to the victim's body inside the house constituted consent to their presence and the search that ensued.

[345]

situation in *Mincey v. Arizona,* 57 L Ed 2d at 301, the United States Supreme Court stated:

> "* * * There was no indication that evidence would be lost, destroyed or removed during the time required to obtain a search warrant. Indeed, the police guard at the apartment minimized that possibility. And there is no suggestion that a search warrant could not easily and conveniently have been obtained. We decline to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search."

*See also State v. Brothers,* 4 Or App at 258. The state has not offered justification for the failure to obtain a warrant, and none is apparent from the record. Because a warrantless search or seizure is per se constitutionally unreasonable unless justified by exigent circumstances, and because there were no exigent circumstances after the day of the homicide, it was error to admit evidence seized without a warrant on November 24.

The next question is whether the erroneously-admitted evidence was prejudicial to defendant. Her principal defense was that the homicide was justified because it was committed in self-defense. She testified that her husband attacked her and that she was forced to shoot him to protect herself. The state relied on ballistics evidence derived from the homicide weapon, a bullet slug and the ceiling tile, all of which were seized on the second day of the investigation, to disprove defendant's theory of self-defense. The evidence was qualitatively different from the observations of the preceding day. The jury was instructed on murder, justification as a defense, and the lesser-included offenses of first-degree manslaughter, second-degree manslaughter, and criminally negligent homicide.

Because the justification defense relates to

[346]

manslaughter in the first degree and because the erroneously-admitted evidence was used to disprove the defense, we cannot say beyond a reasonable doubt that the admission of the evidence seized in violation of the Fourth Amendment was harmless error. Therefore, the conviction must be reversed. *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967).

For the reasons stated above, those photographs taken on November 23 are admissible; those taken on November 24 are not. We cannot determine from the record when many of the photographs were taken. Therefore, admissibility of individual photographs must be determined at the new trial.

Defendant's second assignment of error requires consideration because the issue may recur on remand. She contends that it was error to admit testimony that she had previously threatened two women whom she believed were romantically involved with her husband.

The indictment charged defendant with intentionally causing the death of her husband. An element of first degree manslaughter is that the homicide be "intentional."[3] Accordingly, the state may establish intent by proving motive. *State v. Lehmann,* 6 Or App 600, 602, 488 P2d 1383 (1971). A co-worker of defendant testified for the prosecution that three or four days before the homicide, defendant stated that she would kill her husband. The witness understood defendant to be upset because her husband had been romantically involved with another woman. Thereafter, the prosecution called as witnesses two women who had been friends of the victim. The first testified that in June,

---

[3] ORS 163.118(1) provides:

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"(a) It is committed recklessly under circumstances manifesting extreme indifference to the value of human life; or

"(b) It is committed intentionally under circumstances not constituting murder."

1977, defendant had assaulted her and threatened to blow her head off if the decedent did not stop associating with her. She also testified to a similar threat in July, 1977. The second witness testified that over two years before the homicide, defendant assaulted her in a tavern restroom and told her to keep her hands off defendant's husband. A third witness also testified about the tavern incident.

The challenged testimony was relevant to prove motive for the homicide. As such, it was admissible if its probative value outweighed the prejudice to defendant that is caused by evidence of other crimes. *State v. Manrique,* 271 Or 101, 205-11, 531 P2d 239 (1975). Here, defendant's threats to the two other women were clearly relevant to the prosecution's theory that defendant was motivated by jealousy. When taken together with statements to her co-worker several days before the homicide, they were also relevant to her state of mind at the time of the homicide. While the relevancy of the second incident is dissipated by its remoteness in time from the crime, close calls on relevancy are best made by the trial judge, *State v. Washington,* 36 Or App 547, 550, 585 P2d 24 *rev den* (1978). Particularly where the conduct is repeated closer in time to the crime, we will not hold the admission to be erroneous as a matter of law. Because it is unlikely that evidence of threats to or assaults on third persons would improperly influence the jury's verdict, the probative value of the testimony outweighed the danger of prejudice and it was properly admitted. *See State v. Flygare,* 18 Or App 292, 294-95, 525 P2d 181 *rev den* (1974); *State v. Gardner,* 16 Or App 464, 466-68, 518 P2d 1341 *rev den, cert den* 419 US 998 (1974); 1 Wharton's Criminal Evidence, 325-27, 419-20 (13th ed 1972).

Reversed and remanded for new trial for manslaughter.