Argued and submitted February 3, affirmed on appeal and on cross-appeal
December 30, 1992

STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

JAMES LEE DOWDY,
*Respondent - Cross-Appellant.*

(90CR-0859FE; CA A69390)

844 P2d 263

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James A. Arneson, Roseburg, argued the cause for respondent - cross-appellant. With him on the brief was Arneson & Wales, Roseburg.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant was charged with manufacture and possession of a controlled substance. ORS 475.992(1)(b); ORS 475.992(4)(a). The state appeals a pretrial order suppressing the fruits of searches of defendant's car and motel room, and defendant cross-appeals the court's denying suppression of evidence found during an earlier search of the motel room. We affirm on appeal and on cross-appeal.

We take the facts from the trial court's findings. Defendant checked into the Hillside Court Motel on March 10 or 11, 1990, and informed the motel staff that he planned to leave on March 12. On the morning of March 12, he left his room and placed a "do not disturb" sign on his door but failed to notify anyone at the motel that he intended to stay past 11 a.m., the checkout time. Shortly after 11 a.m., a motel maid, the wife of a police officer, entered defendant's room to clean it and found scales under the bed. She promptly called the police. Officer Gugel arrived at the motel at 11:18 and, with the manager's consent, searched the room. He found the scales under the bed and observed some white crystal powder on a countertop. He looked through a duffel bag in an attempt to identify the occupant, but found nothing. Gugel then took the scales and the white powder to the police station.

Shortly after Gugel had left the motel, defendant called the motel to say that he wished to rent the room for another night; he was told that he could. At about 2:30 p.m., he returned to the motel, and Gugel was immediately advised. Gugel returned to the motel and stopped defendant's car as it was leaving the motel parking lot. Gugel asked defendant to consent to a search of his car; defendant refused. He was then advised of his *Miranda* rights and, when questioned, denied any knowledge of the scales, but consented to a search of his person. The officer found $1,005 in defendant's pants pocket. Defendant explained that he worked at odd jobs, such as welding, and had just cashed a check. The officer seized the cash and gave him a receipt. He told defendant that he could leave, but could not get into his car or go into his motel room. Defendant left on foot while Gugel went to obtain a search warrant to authorize a search of defendant's car and motel room. Another officer stood guard over the car.

The white powder was tested more than three hours after it was seized; it was cocaine. At 6:41 p.m., Gugel obtained warrants to search defendant's car and the motel room.[1] A civilian assisted in searching the underside of the car and found nothing. The officers found a package of baggies of white powder concealed under the carpeting under the dash on the driver's side of the car and a voice activated recorder in the motel room.

■    Defendant moved to suppress all of the evidence seized as a result of the searches of his motel room, his car and his person. He contends that the first warrantless search of his motel room and the seizure of the scales and the white powder were without probable cause or exigent circumstances and that the later seizure of his car and motel room without a warrant were without probable cause. The trial court found that Gugel had seized defendant's car and motel room before he had probable cause to believe that defendant had committed a crime, because

> "[t]here is no evidence that Officer Gugel thought the white crystal powder was anything criminal or that he was told that it was, at least prior to seizing the car. According to the affidavit for search warrant, a field test was not run on the white powder until more than three hours after its seizure from the motel room and not before defendant refused a search of his automobile and the seizure thereof. The fact of finding scales, an unidentified white powder and $1005.00 on his person is not sufficient to establish probable cause to believe drugs and evidence of possession thereof would be found in the car or the motel room. * * *

> "It is clear that the seizure of the car and the motel room were made prior to the establishment of probable cause. This, under either Article I, section 9 of the Oregon State Constitution or Amendments 4 and 14 of the Federal Constitution, is improper."

The evidence supports those findings, and we are bound by them. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). The findings support the court's conclusion that evidence seized from defendant's car and motel room after he was stopped should be suppressed. However, it held that the items seized

---

[1] Both warrants were issued on the basis of one affidavit.

from the motel room before it and the car were seized were admissible.

On the state's appeal, all of its arguments but one hinge on the proposition that Gugel had probable cause to believe that defendant possessed a controlled substance. Essentially, it contends that any experienced police officer would have so believed. However, probable cause has both a subjective and objective component. *State v. Owens*, 302 Or 196, 729 P2d 524 (1986). The state concedes that Gugel *never* said that he thought that the white powder was a controlled substance but argues that he *must have* thought so. That is not sufficient under *Owens*; it would only show that, if he had held that belief, it would have been objectively reasonable.

■■ It also contends that, even if there was no probable cause, Gugel did not seize either defendant's car or his motel room; he only "secured" them after a valid stop for a "reasonable" time—about 3-1/2 hours. The state did not make that argument below. In any event, with respect to the motel room, *State v. Matsen/Wilson*, 287 Or 581, 588, 601 P2d 784 (1979), says that, when police "secure the premises," they have seized them, and the seizure must be justified accordingly. *See State v. Drouhard*, 31 Or App 1083, 572 P2d 331 (1977), *rev den* 282 Or 189 (1978). As to the car, the state relies on ORS 131.615(2), which permits a police officer to detain a person "for no longer than a reasonable time" after a stop. The argument is that Gugel detained defendant for no longer than was reasonable, after which he was permitted to leave without his car and was no longer stopped; the only thing that the officers did afterwards was watch his car. We agree with the trial court that defendant's car was seized and affirm the court's suppression of evidence seized before Gugel established probable cause by testing the white powder.

Defendant cross-appeals the denial of his motion to suppress evidence seized in the first search of his motel room and in the search of his person. With respect to the latter contention, the trial court's conclusion that defendant's consent to a search of his person was freely and voluntarily given is supported by the evidence.

■ Whether Gugel's initial search of defendant's motel room was permissible depends on whether the motel manager

had common authority over it after the checkout time had passed and defendant had not re-rented the room. He argues that the "do not disturb" sign on the door and the presence of his belongings in the room demonstrated his continued proprietary and privacy interest in the motel room. Although he continued to have some interest in the room, we have held that a motel employee has authority to consent to a search of a motel room after checkout time has passed and the tenant has not paid for an additional day's rent. *State v. Bonner*, 49 Or App 849, 621 P2d 87 (1980); *State v. Taggart*, 14 Or App 408, 512 P2d 1359 (1973), *rev den* (1974).

The validity of the manager's consent turns on whether she had common authority over the premises. A third person has common authority if it is reasonable to conclude that that person had the right to inspect in her own right and that the defendant had assumed the risk that the third person might grant permission to others. *See State v. Williams*, 48 Or App 293, 297, 616 P2d 1178 (1980). After the checkout time had passed and defendant had not notified the management that he planned to stay over, there is no doubt that the manager had authority to permit the maid to enter the room; she had common authority over it. Because the manager's consent was valid, defendant's privacy interest in the room was not violated. Therefore, defendant's section 9 interests could not have been violated when the officer entered to search. *See State v. Tanner*, 304 Or 312, 321, 745 P2d 757 (1987).

Defendant argues that, even if the search was lawful, seizure of his personal property was not. That argument would have merit if defendant's effects had been searched. The powder and scales, however, were in plain view and were observed within the scope of the manager's consent. Given defendant's limited cross-assignment of error,[2] we affirm the trial court's refusal to suppress the evidence found during the first search of the motel room.

Affirmed on appeal and on cross-appeal.

---

[2] Defendant has not argued that, because the trial court concluded that Gugel lacked probable cause to believe that defendant had committed a crime until the white powder was tested, he did not have probable cause to seize the evidence. Therefore, we do not consider that question.