Argued and submitted September 30, 1993, reversed and remanded April 20, petition for review denied July 19, 1994 (319 Or 406)

## STATE OF OREGON,
*Appellant,*

*v.*

## RAY FRANKLIN BLASINGAME,
*Respondent.*

## (L91-0440CR; CA A75914)

873 P2d 361

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert K. Udziela argued the cause for respondent. With him on the brief were Kimberly Chaput and Pozzi, Wilson, Atchison, O'Leary & Conboy.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

RIGGS, J.

Durham, J. pro tempore, dissenting.

## RIGGS, J.

Defendant was charged with first degree manslaughter and felon in possession of a firearm. ORS 163.118; ORS 161.610. The state appeals a pretrial order suppressing evidence. ORS 138.060(3). We reverse.

We take the facts from the trial court's findings and the evidence that is consistent with those findings. *State v. Davis*, 313 Or 246, 250, 834 P2d 1008 (1992); *State v. Huckaba*, 115 Or App 728, 730, 839 P2d 768, *rev den* 315 Or 272 (1992). On June 14, 1991, Lake County Sheriff Reed and Deputy Cates, both of whom are also deputy medical examiners, went to defendant's home in Paisley, Oregon, to investigate a reported suicide. They approached the residence, knocked and, after receiving no answer, opened the unlocked front door.

They entered as medical examiners to see if the victim was alive and to render aid, if necessary. They found the victim lying in a pool of blood in the kitchen. Reed checked the victim's vital signs, which revealed that he was dead, while Cates made a cursory search for weapons, and found none. After two or three minutes they heard defendant and a companion in the back yard. Reed and Cates left the house through the kitchen door and met defendant.

Defendant, who was victim's father and resided in the house, told Reed and Cates that he had found his son dead on the floor that morning. Defendant also said he had not touched the body and had not seen a weapon. Reed then asked if he could re-enter the house to use the phone, and defendant consented.[1] He went back into the house through the kitchen door and, at some point, rolled the victim's body over and saw that there was no weapon under the body. The discovery of

---

[1] Reed's testimony played a significant role in this case. Defendant's motion to suppress this evidence was originally denied, based on Reed's testimony that he had asked for, and received, defendant's consent to search for a weapon when he re-entered the house. The trial court reversed its decision on the motion to suppress when Reed recanted his earlier testimony after the prosecutor brought to light earlier statements by Reed to a defense investigator indicating that Reed had never asked for consent to perform a search. However, at both hearings, Reed testified that he asked for and received consent to re-enter defendant's house to use defendant's phone.

this evidence, or lack of evidence, led Reed to suspect, for the first time, that the death was not a suicide.

Reed then called Detective Sergeant Stroup and asked Stroup to prepare a search warrant to search defendant's residence, and for, *inter alia*, hair, blood samples, fingernail scrapings and gunshot residue from defendant. Both the Lake County District Attorney and the Lake County Circuit Court judge were unavailable, so Stroup requested a search warrant from a Klamath County District Court judge who was acting as a Lake County Circuit Court judge pro tempore.

Later that same day, Officer Lee went to defendant's home and requested that defendant accompany him to Lake District Hospital so that the search warrant could be executed. Lee did not have a copy of the search warrant with him and did not read or give a copy of the warrant to defendant, as required by ORS 133.575(3).[2] However, Lee did tell defendant a search warrant had been issued and informed him of what was in the warrant. Defendant voluntarily accompanied Lee to the hospital, where defendant was held overnight for medical reasons unrelated to the search.

When defendant was released from the hospital the following morning, Lee met defendant, brought him to the sheriff's office and advised him of his *Miranda*[3] rights. Defendant was interviewed for a few hours, culminating in a taped statement made at approximately 1:30 p.m.

Defendant moved to suppress all evidence discovered as a result of the warrantless entries into his house. The trial court found that ORS 146.107[4] authorized the first entry into

---

[2] ORS 133.575(3) provides:

"Except as provided in ORS 133.619 [execution of warrant authorizing mobile tracking device], before undertaking any search or seizure pursuant to the warrant, the executing officer shall read and give a copy of the warrant to the person to be searched, or the person in apparent control of the premises to be searched. If the premises are unoccupied or there is no one in apparent control, the officer shall leave a copy of the warrant suitably affixed to the premises."

[3] *Miranda v. Arizona*, 384 US 436, 88 S Ct 1602, 16 L Ed 2d 694 (1966).

[4] ORS 146.107(1) provides:

"A medical examiner, deputy medical examiner or district attorney may enter any room, dwelling, building or other place in which the medical examiner, deputy medical examiner or district attorney has reasonable cause to believe

defendant's home,[5] but found that the second entry resulted in an unlawful search. The state conceded that all other evidence in this case would not have been found without the discovery during the second entry that there was no weapon under the body. Therefore, the court suppressed all evidence discovered during and after the second entry, including the absence of a weapon under the body, the gun used in the homicide, defendant's later statements to the police, physical evidence seized at defendant's home, test results and other evidence discovered through the search warrant.

■     The trial court found that the officer's re-entry in order to search was illegal. However, the trial court also found that Reed asked for, and received, consent before he re-entered the house. When Reed re-entered the house, he stepped directly into the kitchen where the victim's body lay on the floor. Once lawfully on the premises through defendant's consent, any observations Reed made, without intruding further into defendant's privacy, were permissible and could properly form the basis for a search warrant. *State v. Paulson*, 313 Or 346, 352, 833 P2d 1278 (1992). Those lawful observations would also have allowed Reed to seize any evidence in plain view. *State v. Dowdy*, 117 Or App 414, 419, 844 P2d 263 (1992).

■     ORS 146.103(3),[6] which requires a medical examiner to "take custody of or exercise control over the body," provided authority for Reed to roll the body over. Defendant argues that, under *State v. Brothers*, 4 Or App 253, 478 P2d 442 (1972), the medical examiner statute does not, and cannot, authorize searches by medical examiners. However, the

---

that a body or evidence of the circumstances of death requiring investigation may be found."

[5] Defendant does not challenge that ruling.

[6] ORS 146.103(3) provides:

"A medical examiner, district attorney or deputy medical examiner shall take custody of or exercise control over the body, the effects of the deceased and any weapons, instruments, vehicles, buildings or premises which the medical examiner, district attorney or deputy medical examiner has reason to believe were involved in the death, in order to preserve evidence relating to the cause and manner of death."

statute at issue in *Brothers* was *former* ORS 146.450 (renumbered ORS 146.107 in 1973),[7] which addresses the authority of the medical examiner to "enter any room, dwelling, building or other place" in which the medical examiner believes a body or evidence of the circumstances of death may be found. In this case, the medical examiner had already entered, with consent, the room in which the body lay. The issue is whether the medical examiner, who saw a dead body in plain view from a place where he is entitled to be, was authorized to take charge of the body. We hold that a medical examiner may "take custody of or exercise control over" a dead body in plain view in the same way that a police officer may seize evidence that is in plain view from a lawful vantage point. *See State v. Wyman*, 59 Or App 542, 546, 651 P2d 195 (1982); *State v. Eacret*, 40 Or App 341, 345, 595 P2d 490, *rev den* 287 Or 409 (1979). Therefore, the second entry was lawful based on defendant's consent, and the rolling over of the body was authorized by ORS 146.103, the observations made thereby were permissible.

The dissent disagrees with our conclusion that ORS 146.103(3) authorized Reed to roll the body over and that the resulting observations were admissible. However, the dissent does agree that Reed, as a medical examiner, could "exercise control over" the dead body. Nevertheless, the dissent argues

---

[7] ORS 146.107 now provides, in part:

"(1) A medical examiner, deputy medical examiner or district attorney may enter any room, dwelling, building or other place in which the medical examiner, deputy medical examiner or district attorney has reasonable cause to believe that a body or evidence of the circumstances of death may be found.

"(2) If refused entry, the medical examiner, deputy medical examiner or district attorney may apply to any judge authorized to issue search warrants for an order to enter such premises, search for and seize a body or any evidence of the cause or manner of death.

"(3) Upon application supported by an affidavit setting forth facts and circumstances tending to show that a body or such evidence of death is in the place to be searched, the judge shall issue such order to enter and seize.

"(4) To preserve evidence, a medical examiner, deputy medical examiner or district attorney may:

"(a) Place under the custody or control of the medical examiner, deputy medical examiner or district attorney, or enclose or lock any room, dwelling, building or other enclosure for a period of not more than five days.

"(b) Rope off or otherwise restrict entry to any open area.

"(c) Forbid the entrance of any unauthorized person into the area specified under paragraphs (a) and (b) of this subsection."

that somehow Reed's motive in rolling the body over transformed that act into a search. In *State v. Ainsworth*, 310 Or 613, 801 P2d 749 (1990), the Supreme Court said:

"It is the location and behavior of the police officer, *not the officer's motivations*, that determine the existence of a search for Article I, section 9, purposes.

"* * * * *

"The Oregon Constitution *does not require an inquiry into the observing officer's thoughts* to determine whether the officer's conduct unconstitutionally violates a defendant's Article I, section 9, rights." 310 Or at 620-21. (Emphasis supplied.)

The dissent incorrectly concludes that, in this case, the exercise of control over a dead body was an unlawful search.

■      By way of cross-assignment of error, defendant contends that the warrant was invalid, because the issuing judge is a Klamath County District Court judge who did not have authority to issue a search warrant for execution in Lake County. We disagree. ORS 1.615(1) authorizes the Supreme Court to assign any regularly elected and qualified judge of the district court to serve as a judge pro tempore of any circuit court. ORS 1.615(3) provides that a judge pro tempore has all the "powers and duties" of a regularly elected and qualified judge. In Supreme Court Order No. 90-168 the Supreme Court appointed all district court judges as judges pro tempore of the district and circuit courts of all other districts and counties. Therefore, the judge was within her authority as a judge pro tempore of the circuit court of Lake County to issue a warrant for execution in Lake County.

■ ■      Defendant next contends that evidence seized pursuant to the warrant should be suppressed for violation of ORS 133.575(3). The trial court found that the executing officer failed to read the warrant to defendant and failed to give him a copy of the warrant. Nevertheless, the trial court also found that those failures did not invalidate the warrant because the omissions were insignificant under the circumstances of this case. We agree. Unless there is an express exclusionary remedy, a statutory violation in obtaining or executing a warrant does not *require* suppression of evidence. *State v. Brock*, 294 Or 15, 21, 653 P2d 543 (1982); *State v. Cortman*, 251 Or 566, 571, 446 P2d 681 (1968), *cert den* 394

US 951 (1969). However, when the violation is aggravated, that is, when it reaches constitutional dimensions, suppression is required. *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973). Defendant does not claim that Lee misled him, that the information Lee gave him was wrong or that Lee omitted any information. The failure to wait for a copy of the warrant was reasonable because of the possibility of rapid dissipation of some of the evidence seized and the distance between the issuing judge and the place where the warrant was executed. We find no aggravated violation of ORS 133.575(3), nor any violation that would reach constitutional dimensions.

Defendant's final cross-assignment is that the court erred by not suppressing statements he made after the search of his home. Defendant contends that statements that follow an illegal search, even those made after a defendant's voluntary waiver of *Miranda* rights, may be suppressed. *See State v. Munro,* 96 Or App 238, 244, 772 P2d 1353 (1989). Because the search was not illegal, defendant's argument fails, and he offers no other argument to exclude the statements.

Reversed and remanded.

**DURHAM, J. pro tempore,** dissenting.

I disagree with the majority's conclusion that "the rolling over of the body was authorized by ORS 146.103, and the observations made thereby were permissible." In reaching its conclusion, the majority reasons that

> "a medical examiner may 'take custody of or exercise control over' a dead body in plain view in the same way that a police officer may seize evidence that is in plain view from a lawful vantage point." 127 Or App at 387.

I agree with that statement, but it is inapplicable here, because Sheriff Reed testified that he rolled the body over to look for a weapon, not to take custody of the body. That is a search. Reed testified:

> "When we reentered the house the second time there was no weapon showing anywhere. We rolled the body partially over on its side to see if there was a weapon or anything underneath. At that time there was no weapon showing."

The majority concludes that ORS 146.103 authorizes the rolling over of the body, but fails to address Reed's warrantless search for a weapon. ORS 146.103 does not and cannot authorize a medical examiner to conduct an unconstitutional search.[1] *State v. Brothers*, 4 Or App 253, 260, 478 P2d 442 (1970).

The emergency and exigent circumstances exceptions to the warrant requirement are inapplicable on this record, as the trial court found. I also agree with the trial court that the inevitable discovery doctrine is inapplicable. ORS 133.683 codifies that doctrine. *State v. Miller*, 300 Or 203, 228, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986); *State v. Grelinger*, 102 Or App 297, 300, 794 P2d 446 (1990). That statute provides:

> "If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

We have held that that rule does not render admissible primary evidence discovered as a result of an unlawful search or seizure. *State v. Schellhorn*, 95 Or App 297, 303, 769 P2d 221 (1989). In this case, the absence of the gun, discovered by rolling the body over, is primary evidence. The evidence discovered pursuant to the resulting search warrant

---

[1] The majority argues that the trial court should have disregarded Reed's motive to search because, apart from that motive, ORS 164.103 authorized him to roll the body over and to make the resulting observations. The majority relies on *State v. Ainsworth*, 310 Or 613, 801 P2d 749 (1990), which held that a plain view aerial observation of illegal activity from a lawful vantage point was not a search. The majority misapplies *Ainsworth*. Here, the officers entered the home with consent but, as the trial court found, searched beneath the body without a warrant or consent. The site of the search was not in plain view. I conclude that Reed engaged in a search because of his behavior, not his motive, in moving the body so that he could inspect the space beneath it for evidence, and the fact that Reed could not make an unaided observation of that space from his location in the home. Because Reed's act was a search, it must pass muster under Article I, section 9, whether or not a statute purports to authorize it.

is subsequent evidence. Because the state does not show that the police would have discovered the subsequent evidence without the primary evidence, the inevitable discovery doctrine does not render the subsequent evidence admissible.

In its brief, the state says:

"The officers then re-entered the house, turned the body over, and did not find a firearm under the body. *Based on that discovery*, which indicated that the death was not a suicide, the officers obtained a search warrant to seize hair, clothing, and a blood sample from, and to perform a gunshot residue test on, defendant's person, as well as to search defendant's residence and vehicles." (Emphasis supplied.)

The majority ignores the fact that the police obtained the search warrant because of the officer's observations during the second entry. The trial court's suppression order was correct, because those observations amounted to an unlawful search. I would affirm.