Argued and submitted October 20, affirmed December 22, 1980

STATE OF OREGON,
*Respondent,*

*v.*

EDWARD L. BONNER,
aka Edward L. Phillips,
*Appellant.*

(No. 10-79-07133, CA 16023,
No. 10-79-09116, CA 16768)

(Cases Consolidated)

621 P2d 87

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Schwab, Chief Judge, and Richardson and Buttler, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Defendant was convicted of forgery in the first degree (ORS 165.013) and of being an ex-convict in possession of a firearm (ORS 166.270). He appeals from the conviction under ORS 166.270 and the sentence under ORS 165.013. He makes five assignments of error: (1) that statements he made to a police officer in connection with the firearm charge were made in the course of a custodial interrogation which violated *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), and that the statements should have been suppressed; (2) that evidence of that offense was procured through an illegal search and seizure and also should have been suppressed; (3) that evidence of defendant's prior convictions and bad acts was erroneously received at his trial on the firearm charge; (4) that the trial court erred in denying his motion for acquittal on that charge; (5) and that the trial court erred in imposing a sentence on the forgery charge which was consecutive to his sentence for possession of a firearm. We affirm.

At approximately 2:25 a.m. on July 19, 1979, the car in which defendant was a passenger and his companion, Reece, was the driver was stopped by an Oregon State police officer because it was being driven in an erratic manner. A routine check disclosed that the car was stolen. Defendant and his companion were taken into custody for unauthorized use of a vehicle. The arresting officer inventoried the car and, among other things, found a room key for a motel in Eugene and a paper with the addresses of banks written on it. Identification in the name Edward Phillips was found on defendant's person. Papers found in the car contained the names Reece and Wilbur Troy.

Defendant's *Miranda* rights were read to him and he was taken to the Lane County jail. He stated to an officer that he had never been in the motel room. The officer then asked defendant whether he would have anything to say after the motel room was fingerprinted later in the morning.[1] At that time defendant "demanded to keep

---

[1] The best explanation of the officers' interest in the motel room is that they questioned whether defendant had given them his correct name, and thought the motel room would enable them to establish his identity. The police were also "suspicious" about the bank addresses found in the car.

quiet, and asked for an attorney." No contact with an attorney was made.

At 9:30 a.m., an officer who had not been involved in the arrest or previous conversations with the defendant called the motel and was informed that the room was registered in Reece's name. The rent for the room was paid only through the noon checkout time on that day. The officer asked the motel manager if he would consent to the search of the room after 12 o'clock, and the manager agreed to give consent if further rent were not received by noon.

At approximately 10:30 a.m., the defendant appeared in court and was ordered released because no charge had been filed. Thereafter, according to defendant, he telephoned the motel and indicated that he wished to extend the rental of the room for another day. He did not identify himself. The person who answered the phone informed him that he would have to pay rent by 12 o'clock. Before defendant was able to leave the jail, a complaint was filed against him for unauthorized use of a vehicle and he was returned to his cell.

Shortly before noon, two police officers arrived at the motel. Immediately after noon, with the consent of the motel management, the officers searched the room and discovered a pistol and ammunition, various personal items, and certain documents bearing the name Edward Bonner. They also found a map which contained circles denoting the locations of First National Bank branches, one of which corresponded with a bank address found in the car.

The officers returned to the jail. While one of them was photographing defendant, defendant volunteered that his true name was Edward Bonner rather than Edward Phillips. At that time, the officer again repeated defendant's *Miranda* rights to him. The defendant agreed to talk and signed an advice of rights form. During the course of the ensuing interrogation the officer asked "how [defendant] would explain it if his fingerprints were on the weapon" found in the motel room. In fact, no fingerprints had been found. According to the officer, defendant made the following response:

"* * * He admitted that he did handle a gun while in the motel room, and that his fingerprints would be on the weapon; claims that he found the gun early Wednesday morning on July 18, while Reece was taking a shower; stated that he reached under the mattress of the bed and found it near the head of the bed. And explained that, as a matter of routine, he always checks under mattresses of beds while staying at motels; stated that he picked the gun up, unloaded it, and reloaded it, and that when Reece came out of the shower, he asked Reece about the gun. Reece claimed he didn't know anything about the gun being in the room, nor did Reece ever touch the gun. Mr. Bonner stated that he then put the gun under the foot of the bed on the floor, and that's the last time he ever saw the revolver. He emphatically denied that the revolver belonged to him or to Reece, and he emphatically denied that he brought the gun in his luggage with him from Albuquerque * * *."

Defendant argues that the trial court erred by denying his motion to suppress the quoted statement. He contends the statement was obtained in violation of his *Miranda* rights, because the interrogation took place after he had requested an attorney during earlier questioning, and because the officer's suggestion that defendant's fingerprints had been found on the gun was a "coercive tactic." Defendant therefore concludes that he "did not knowingly and voluntarily waive his rights." We disagree.

In *State v. Singleton,* 288 Or 89, 602 P2d 1059 (1979), the Oregon Supreme Court exhaustively reviewed its own and the United States Supreme Court's post-Miranda decisions and adopted the following test:

"* * * we hold that when in such a case a defendant, after arrest and upon being questioned by the police, exercises his right to remain silent and also informs the police of his desire to exercise his right to consult with an attorney, the police must 'scrupulously honor' those rights; that when in such a case it is contended by the state that the defendant has subsequently waived those rights there is a presumption that the waiver was involuntary and the state has a 'heavy burden' to demonstrate that the defendant knowingly and intelligently waived those rights; and that the determination whether there was such a waiver is to be made upon an inquiry into 'the totality of the surrounding circumstances.' We also hold that in such a case the question of waiver is not simply a question of historical

fact, but one which requires the application of constitutional principles to the facts as found." 288 Or at 104.

Here, defendant's request for an attorney was made shortly after his arrest and approximately eight to ten hours before the interrogation in which he made the statement he seeks to suppress. In the interim, he was not subjected to ongoing or repeated attempts to question him or to induce a waiver of his *Miranda* rights. Before making the statement in question, defendant was readvised of his *Miranda* rights and waived them after he had initiated the conversation with the officer by informing the latter of his true name. We conclude that, under the totality of the circumstances, defendant knowingly and voluntarily waived his rights. *See Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975); *Frazier v. Cupp,* 394 US 731, 89 S Ct 1420, 22 L Ed 2d 684 (1969); *State v. Paz,* 31 Or App 851, 866, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978). It is true that the question which elicited the statement defendant seeks to suppress probably was designed to suggest falsely that defendant's fingerprints had been found on the gun. However, that fact does not in itself demonstrate lack of voluntariness. *See Frazier v. Cupp,* 394 US at 739.

■    Defendant's second assignment of error is that the search of the motel room and the seizure of the gun and other evidence from it were unlawful and that the trial court erred by refusing to grant defendant's motion to suppress the evidence. We stated in *State v. Taggart,* 14 Or App 408, 512 P2d 1359 (1973) *rev den; cert den* 419 US 877, 95 S Ct 141, 42 L Ed 2d 117 (1974), where the defendant challenged a warrantless search of a motel room for which he had ceased paying rent and where the management consented to the search:

"'* * * Defendant was renting room 42 on a day-to-day basis. Even though the motel clerk had previously accepted late payment of the room rent, defendant knew or had reason to know that his room could have been rented to another guest at any time after checkout on November 3, unless he made other arrangements or paid the rental rate in advance. Whatever subjective expectation of privacy defendant may have had was not objectively reasonable under these circumstances. * * *'" 14 Or App at 417.

Defendant argues that the holding in *Taggart* should not apply here because law enforcement officials "rearrested" defendant on the unauthorized use of a vehicle charge to detain him and prevent him from getting to the motel to pay rent. Assuming without deciding that defendant's contention would otherwise have merit, his allegation that the complaint for unauthorized use of a vehicle was filed against him for the purpose of detaining him and preventing his going to the motel finds no support in the record.

■    Defendant's third assignment is that it was error to admit the testimony of a police officer in which the witness related defendant's statements that he had been convicted of three prior felonies and had been arrested in Seattle shortly before coming to Oregon. Defendant contends that this evidence of other crimes and prior bad acts was prejudicial and that the state should not have been permitted to introduce evidence of more than one felony to prove the ex-convict in possession of a firearm charge. Under ORS 166.270(3), however, the number of felonies committed can be relevant to the defendant's guilt or innocence of the offense of being an ex-convict in possession of a firearm. That subsection provides:

> "Subsection (1) of this section shall not apply to any person who has been convicted of only one felony under the law of this state or any other state, or who has been convicted of only one felony under the laws of the United States, which felony did not involve the possession or use of a firearm, and who has been discharged from imprisonment, parole or probation for said offense for a period of 15 years prior to the date of alleged violation of subsection (1) of this section."

In any event, we discern no possibility of prejudice as to the conviction under ORS 166.270. As noted above, the forgery conviction was not appealed.

The testimony about defendant's Seattle arrest could not have been prejudicial, because one of the papers seized from the motel room and previously introduced into evidence had already brought the fact of that arrest to the jury's attention. Defendant did not object to the admission

of the document on grounds that it constituted evidence of a prior bad act. (He did object on his theory that the search of the motel room was illegal.)

■　Defendant next contends that the trial court erred by denying his motion for acquittal of possession of a firearm. Defendant argues that the state's evidence was not such that a rational trier of fact could have found that defendant possessed the gun or constructively possessed it. We disagree. Defendant's statement to the officer, quoted *supra,* that he found the gun under a mattress in the motel room, that he routinely searches under beds in lodging places, that he picked the gun up and unloaded it and reloaded it, and that he then placed the gun under the bed, would in itself be sufficient to support a finding of possession by a rational factfinder.

■　Defendant's final assignment of error is that the trial court had no authority to sentence defendant to consecutive terms of imprisonment for the possession of a firearm and the forgery charges because Oregon statutes give the courts no authority to impose consecutive sentences. *State v. Jones,* 250 Or 59, 440 P2d 371 (1968), defeats defendant's argument. His contention that *Jones* was wrongly decided must be addressed to the Supreme Court.

Affirmed.