Argued September 12, reversed November 7, 1962

# STATE OF OREGON *v.* OSTER

376 P. 2d 87

No. 13376.

*Elmer M. Amundson,* Salem, argued the cause and filed a brief for appellant.

*Gary D. Gortmaker,* Deputy District Attorney, Salem, argued the cause for respondent. With him on the brief was Hattie J. Kremen, District Attorney, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, and LUSK, Justices.

LUSK, J.

The defendant was convicted by a jury of the crime of receiving and concealing stolen property in Marion County, Oregon. The amended indictment described the property as "* * * 650 check blanks and one Todd Protectograph check protector, and one Royal standard typewriter, of the personal property of Pepsi Cola Bottling Company, a corporation, * * * ." The court, in its charge to the jury, limited the issue to 650 check blanks.

The defendant has appealed and assigns error to the court's denial of his motion for a directed verdict of not guilty based on the ground of alleged insufficiency of the evidence.

The evidence establishes that on the night of April ninth or early morning of April 10, 1961, the office of the Pepsi-Cola Bottling Company in Salem was burglarized and the property described in the indictment stolen.

Darla Josette Forkner, ruled by the court to be an accomplice, testified that between four and five o'clock on the morning of April 10, 1961, she was with the defendant in an apartment in Salem and that she and the defendant and Joe Bowers, Neal Christensen, and Jim Cain went from there in a Mercury automobile owned by Bowers to Clear Lake, about five miles north of Salem in Marion County. There, in the presence of the defendant, Bowers said that he and Christensen had burglarized the Pepsi-Cola Bottling Company and had taken payroll checks, a "protector," and a typewriter. While the witness and the defendant were in the car, one of the others brought the check protector to the car, but did not put it in the car. As the witness refused to answer many questions put to her on the ground that to do so would incriminate her, there are frequent gaps in her testimony.

She was shown a purse and asked to state whose it was, but refused to answer the question. Her testimony proceeded:

"A  When did you last see the purse before to-day, Mrs. Forkner?

"A  In the car. No, I seen it one other time after that.

"Q  I didn't hear your answer.

"A  I saw it one other time after that.

"Q  After when?

"A  Before now and after I last saw it, in the car.

"Q Let me ask you first, when was it in the car?
"A While it was in the car, I had it.

"Q Was that on the morning you and Mr. Bowers and Mr. Christensen and Mr. Cain and Mr. Oster went to Clear Lake?
"A Yes.

"Q Did you leave it in the car?
"A Did I leave it in the car?

"Q Yes.
"A Yes.

"Q What was in it when you left it in the car?
"A I refuse to answer on the grounds it may tend to incriminate me.

"Q Would you state whether or not something of the Pepsi-Cola Bottling Company was in your purse when you left it in the car?
"A I refuse to answer.

"Q Would you state whether or not you ever in the company of Mr. Zavinski and Sergeant Huffman saw that purse again after that time?
"A Yes, I did.

"Q Where was it when you saw it again after that time?
"A Hidden under a log at Clear Lake.

"Q Who hid it under the log at Clear Lake?
"A I didn't actually see it hid.

"Q Did you hide it under a log at Clear Lake?
"A No, I didn't.

"Q Who had the purse the last time you saw it before it was hidden?
"A Jim Cain.

"Q I didn't understand your answer.
"A Jim Cain.

"Q Where was it when you saw it last?
"A Under the log at Clear Lake.

"Q  Before that time where was it when you saw it last?

"A  Well, it was in the car before that.

"Q  Who else was in the car?

"A  I refuse to answer that question on the grounds it may tend to incriminate me.

"Q  Was Mr. Oster in the car at that time?

"A  I refuse to answer.

"Q  When you found it hidden under the log, who else was present there, Mrs. Forkner, if anyone?

"A  Sergeant Huffman and Mr. Zavinski and the police matron from upstairs, Mary somebody.

"Q  Was there anything in your purse when it was found underneath the log?

"A  Yes.

"Q  What was in there?

"A  Checks from the Pepsi-Cola Bottling Company.

"Q  Was there any conversation at Clear Lake about any of these checks from the Pepsi-Cola Bottling Company?

"A  Between who—Zavinski and Huffman?

"Q  Did you hear anything at all?

"A  Do you mean when I was with Sergeant Huffman and Zavinski?

"Q  No, when you were at Clear Lake with Cain, Christensen, Bowers and Oster.

"A  Yes.

"Q  What was said about the checks from the Pepsi-Cola Bottling Company?

"A  I don't remember exactly what was said.

"Q  Could you tell us substantially what was said?

"A  Just that they had stolen them."

The defendant, the witness Forkner and Cain, Bowers and Christensen were at Clear Lake for about

ten minutes. They then left for Portland, Multnomah County, in Bowers' car and arrived at a motel there about an hour later. The foregoing is, in substance, the testimony of the accomplice.

John T. Zavinski, a deputy sheriff for Marion County corroborated the testimony of the witness Forkner as to finding the purse and its contents at Clear Lake. He testified that it "was recovered near a log and it was covered at that time by small pieces of bark and debris."

The checks found in the purse were not produced at the trial. The purse was offered in evidence, but excluded on objection of the defendant.

A Todd Protectograph was identified by the office manager of Pepsi-Cola Bottling Company as the one stolen in the burglary. It was recovered by the officers "off Fairmount Blvd." in Portland. The protectograph was also, on objection, excluded from the evidence by the court.

Other evidence sufficiently shows possession by the defendant in Multnomah County of some of the stolen property, knowing it to have been stolen. On April 11 or 12, 1961, he cashed one of the stolen checks at a store in Portland. The check was made out to Joe S. Parey and was in the amount of $118.41. The signature on the check of Paul Farnsworth (who signed practically all the checks of the bottling company) had been forged. There was evidence that defendant was the forger. The accomplice was with the defendant at the time he cashed the check. They came to the store in the Mercury automobile belonging to Bowers. There was also evidence that the defendant forged four other stolen checks made out in the same manner. The amounts for which the five checks (which are in evidence) purport to be drawn were imprinted with a protectograph.

The evidence further shows that the defendant, by means not disclosed, although evidently clandestinely, obtained possession of a certificate of discharge from the Marine Corps issued to Joe Stanley Carey of Salem and that he altered the name on the discharge from Carey to Parey and used it to obtain a liquor permit. This is the name of the payee on the checks forged by the defendant.

The argument in support of the assignment of error is directed by counsel for the defendant, in the main, to the failure of the prosecution to introduce any evidence corroborating the testimony of the accomplice, as required by ORS 136.550.[1] Specifically, it is urged that the venue is laid in Marion County, that proof of venue is essential (*State v. Miller*, 133 Or 256, 259, 289 P 1063), and that there is no testimony other than that of the accomplice supporting the charge that the defendant received and concealed stolen property in Marion County.

■ Were this the only question, no great difficulty would be presented, for the rule invoked does not require corroboration of every element of the crime charged; it is sufficient if it tends to connect the defendant with commission of the crime. *State v. Oster*, No. 13372, 232 Or 389, 376 P2d 83, this day decided; *State v. Reynolds*, 160 Or 445, 459, 86 P2d 413; *State v. Brake*, 99 Or 310, 313, 195 P 583. Upon that question, the fact that the corroborating evidence relates to conduct in a different county than the county of venue, is irrelevant.

The real question is whether there is any evidence

[1] A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the crime. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

in the record that the defendant in Marion County received or concealed stolen property, knowing it to have been stolen. We think there is none.

The property involved, as alleged in the indictment, consisted of 650 check blanks of the Pepsi-Cola Bottling Company, a Todd Protectograph and a Royal standard typewriter. No attempt was made to show any connection between the typewriter and the defendant. The Protectograph is out of the case, because the court excluded it from the evidence and withdrew the issue as to it from the jury. Only the checks remain for consideration.

The stolen checks were printed specially for Pepsi-Cola Bottling Company. They each bore the name and address of the company and a serial number. The office manager testified to the numbers of the checks that were missing after the burglary and that the checks introduced in evidence all bore numbers of missing checks. Thus, if the checks found in the purse were included among those stolen, that fact would have appeared from the numbers on them. Since no explanation was given for the failure of the State to introduce them in evidence, the presumption is that they were not introduced because they would not have supported the charge. The testimony of the accomplice concerning them cannot be given any weight. The rule in larceny cases is applicable. That rule is that identification of property found in the possession of the accused as that stolen in the theft with which he is charged must be by the most direct and positive testimony of which the case is susceptible: 32 Am Jur 1033, Larceny § 122; *State v. Handler*, 142 Kan 455, 458, 50 P2d 977; *Garcia v. The State*, 26 Tex 209, 211, 82 Am Dec 605; *Commonwealth v. Kinison*, 4 Mass 646. See, also, *State v. Willson*, 116 Or 615, 623, 241 P 843.

The conclusion is that there is no substantial evidence that the checks found in the purse were part of the stolen property. The State does not so contend in its brief, which does not even mention these checks.

Thus the case is narrowed down to the five checks received in evidence. There is sufficient evidence that at least one of them (possibly all) was in possession of the defendant in Multnomah County. There is nothing which may properly be called evidence to show that he either received or concealed or aided and abetted in receiving or concealing these checks in Marion County. It may be granted that the circumstances of the gathering of the defendant and the others at Clear Lake at an unseasonably early hour of the morning shortly after the burglary perpetrated by two of the party lead to a strong suspicion that no lawful business was in progress. But we are dealing here with a specific charge of crime which the State was required to prove beyond a reasonable doubt; and mere suspicion is not enough. Without some competent evidence that the stolen checks were either in the possession of the defendant in Marion County, or, to the defendant's knowledge, were in the possession of some other member of the party in Marion County while these persons were together on the morning of April 10, the burden of the State to prove venue has not been sustained. We find no such evidence in the record. It was error to deny the defendant's motion for judgment of acquittal.

The judgment is reversed.