Argued May 31, affirmed July 30, reconsideration denied
September 6, petition for review denied October 9, 1979

# STATE OF OREGON,
### *Appellant,*
#### *v.*
# RONALD DALE WEAVER,
### *Respondent.*

## (No. C 78-02-01581, CA 11349)

598 P2d 308

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

John M. Parkhurst, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton, Buttler, and Joseph, Judges, and Peterson, Judge Pro Tempore.

SCHWAB, C. J.

## SCHWAB, C. J.

Executing a warrant that specifically authorized a search for and seizure of cocaine at defendant's residence, police found no cocaine, but did find and seize about six pounds of marijuana. Defendant moved to suppress the marijuana on the ground, among others, that it was admissible under ORS 133.585, which provides:

> "If in the course of the search the officer discovers things, not specified in the warrant, which he has probable cause to believe to be subject to seizure under ORS 133.535 which he *did not have probable cause to expect to find,* he shall also take possession of the things discovered." (Emphasis supplied.)

Under this statute, the state was in the curious position of attempting to prove at the suppression hearing that the police had *not* had probable cause to believe marijuana was present at defendant's residence. The trial court ruled the state had not sustained that burden and ordered suppression. The state appeals. We affirm.

The investigation that culminated in the search began when one Shepherd reported to police that he had been kidnapped by defendant and two other men who shared the same residence. The alleged kidnapping was investigated by Officers Englert and Pritchard. Those officers eventually learned from Shepherd that the alleged kidnapping had been part of a dispute about a "rip off" in a marijuana transaction with defendant and his roommates. The primary focus of the investigation then shifted to drug offenses. Apparently because their responsibilities did not include investigation of drug crimes, Englert and Pritchard turned Shepherd over to another group of officers with that responsibility — primarily Officers Bunnel and Hutchison.

Shepherd was interviewed by one group of officers or another for about four hours between the time when he first reported being kidnapped and the time when

Officer Hutchison applied for a warrant to search for cocaine.[1] Different officers participated in the interview at various points. The factual problem comes down to who told whom what.

Shepherd testified that he stated to Englert and/or Pritchard that he had bought and sold large quantities of cocaine, marijuana and other drugs over a period of years; that some recent large transactions had been with defendant and his roommates; and that within the past couple of days he had personally seen one or more pounds of cocaine and about three kilograms of marijuana at defendant's residence. More specifically, Shepherd testified that he had told Pritchard there was a large quantity of marijuana at defendant's residence, but that he had not told Englert that.

Englert testified that Shepherd stated he had recently seen about three kilograms of marijuana at defendant's residence. Pritchard did not testify. Englert also testified that he "basically" told the narcotics officers all the information he had obtained from Shepherd, *i.e.,* about both cocaine and marijuana. More specifically, Englert testified he could not remember telling Officer Bunnell about the marijuana but "I believe I told [Officer] Hutchison, although the main context of my conversation was the cocaine trafficking * * *."

Bunnell testified that Shepherd did not tell him about any marijuana at defendant's residence and that the only drug Shepherd mentioned to him was cocaine. Bunnell was not asked whether Englert or Pritchard had relayed any information from Shepherd about marijuana.

Hutchison was the officer who prepared the affidavit for the search warrant that referred only to cocaine. He testified that the only information about marijuana he received from Shepherd or other officers

---

[1] The warrant was issued and executed the evening of the same day that Shepherd talked to the police.

involved small amounts which he understood or assumed to be less than an ounce, and for that reason he did not mention it in the affidavit in support of the warrant.

Shepherd's testimony about what he told the narcotics officers, Bunnell and Hutchison, was as follows:

"Q. Now, what did you tell Officer Hutchinson and Officer Bunnell — who were you talking to, actually? Everybody?

"A. Everybody.

"Q. What did you tell the persons present concerning the alleged narcotics in the residence?

"A. I told them that there was narcotics in the house of cocaine and also marijuana, but I wasn't sure.

"Q. Did you tell them how much marijuana?

"A. Three kilos; but I didn't think it would be there.

"Q. You thought it wouldn't be there?

'A. Yeah.

"Q. Okay. Why?

"A. Because I believe that they were supposed to sell it that day or get rid of it or whatever."

Several other officers participated in the execution of the search warrant. One, Officer Blackman, testified on direct examination that before the search began there was some mention of some quantity of marijuana possibly being present in defendant's residence, but that he could not remember who said that. On cross-examination, Blackman admitted that at the preliminary hearing he had testified that the search was "for approximately a pound of cocaine and * * * two or three kilos of marijuana; up to four kilos of marijuana" and that he had obtained that information from Bunnell and Hutchison.

At the conclusion of the suppression hearing the trial court found that:

" * * * the police officer in charge of the investigation had knowledge that it was just as likely that

[205]

there would be marijuana * * * on the premises as the cocaine, and that they were undoubtedly led by their concern for the much more expensive and, one might say, serious drug to simply disregard the marijuana aspect of it in obtaining the warrant."

" * * * * * *

"Neither of them [cocaine and marijuana] move more rapidly. If anything, the marijuana would be more likely to be there on a continuing basis than the cocaine * * *.

"I don't think we can fairly say from the evidence * * * that they didn't have * * * probable [cause] that the marijuana would still be there, when we rely on exactly the contrary reasoning to justify a search for the cocaine."

" * * * * * *

" * * * the only distinction between the marijuana and the cocaine lay in the importance which the officer ascribed to it * * *."

In context, we interpret the trial court's reference to "the police officer in charge of the investigation" to be a reference to Officer Hutchison, who applied for the search warrant. And we interpret the trial court's conclusion that Hutchison "had knowledge that it was just as likely that there would be marijuana * * * on the premises as cocaine" to be a way of saying that the state failed to sustain its burden of proving the contrary.

■ So interpreted, there is substantial evidence to support the trial court's findings. Although Hutchison denied he had any knowledge of quantities of marijuana greater than one ounce, the evidence to the contrary includes: Shepherd's testimony that he mentioned large quantities of marijuana in Hutchison's presence; Englert's testimony that he believed he had repeated Shepherd's story about large quantities of marijuana to Hutchison; and the inference that can be drawn from Blackman's testimony that the searching officers were instructed to look for marijuana.

[206]

Moreover, the trial court did not have to literally disbelieve Hutchison's denial to arrive at its conclusion. It is clear that the officers were completely preoccupied with the prospect of seizing one or more pounds of cocaine. Given testimony that a pound of cocaine can sell for as much as $36,000, their preoccupation was perhaps both understandable and reasonable. But it also suggests the possibility that under all of the circumstances information about marijuana — even in very large quantities — was disregarded or quickly forgotten by some of the officers involved.

Under the trial court's factual findings, supported by substantial evidence, suppression is required. Although the parties argue both statutory and constitutional issues, we find the statutory issues dispositive and thus do not reach the constitutional issues. *State v. Spada,* 286 Or 305, 594 P2d 815 (1979).

■ It is the general rule "that evidence of another crime discovered in the execution of a search warrant directed to other items may be seized also." *State v. Olson,* 15 Or App 393, 395, 515 P2d 1342 (1973). However, ORS 133.585 represents a statutory limitation on that general rule; items "subject to seizure under ORS 133.535" which are "not specified in the warrant" can only be seized if the officers "did not have probable cause to expect to find them." Contraband, which would include marijuana, is subject to seizure under ORS 133.535(2). Marijuana was not specified in the warrant. The trial court's findings about who told whom what led to its conclusion that there was as much probable cause to expect to find marijuana as to expect to find cocaine.

■ The state suggests that if we find a violation of ORS 133.585, as we have, then suppression is not an appropriate remedy for the statutory violation. The issue of whether evidence is inadmissible because obtained in violation of some statute is a difficult one in the Oregon cases. In *State v. Valentine/Darroch,* 264 Or 54, 68, 504 P2d 84 (1972), the Supreme Court

[207]

stated: "We have never excluded evidence because it was obtained in violation of a statute, as contrasted with a violation of the Federal or State Constitutions." This statement was not accurate when made because it overlooked the Supreme Court's prior decision in *State v. Fogle,* 254 Or 268, 459 P2d 873 (1969), in which evidence was held inadmissible because obtained in violation of a statute. Furthermore, since *Valentine/Darroch* the Supreme Court ruled evidence inadmissible because obtained in violation of a statute in *State v. Valdez,* 277 Or 632, 561 P2d 1006 (1977).

The stated rationale for suppression in *Valdez* was that "the purpose of the present statute is to protect interests of the kinds which are protected by the Fourth Amendment to the United States Constitution and by Art I, § 9, of the Oregon Constitution." 277 Or at 629. This rationale does not completely resolve the issue. A more comprehensive measure is legislative intent.

When the legislature unequivocally states that certain evidence is admissible or inadmissible, courts do not hesitate to give effect to the statute. The present problem arises, however, when the legislature enacts some limitation on the evidence-gathering process but fails to state whether deviation from the required process renders the evidence inadmissible. That was the situation in *Valentine/Darroch, supra,* which involved a claimed deviation from the requirements of the knock-and-announce statute. That was also the situation in *Valdez* which involved a claimed deviation from the requirements of the stop-and-frisk statute.

But that such a statute is equivocal or even silent does not alter the fact that the appropriate inquiry is one of legislative intent: given that the legislature has said that evidence cannot be obtained in a certain way, did the legislature intend that evidence obtained in a prohibited manner should be, for that reason, inadmissible? That is the situation we confront here. The

legislature has prohibited the seizure of the marijuana from defendant's residence under the facts as found by the trial court (ORS 133.585), but has not stated whether evidence thus obtained is inadmissible.

ORS 133.673(1) suggests — but does not compel — the conclusion that the legislature intended that evidence obtained in violation of ORS 133.585 would be inadmissible. ORS 133.673(1) provides:

"Objections to the use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress * * *."

The legislative history of ORS 133.585 suggests — but also does not compel — the conclusion that the legislature intended that evidence obtained in violation of that statute would be inadmissible:

"It is possible that, in the course of conducting a search for things specified in the warrant, the officer may observe things not so specified which are contraband, or which for some other reason appear to be things subject to seizure under section 136. If the officer's basis for such belief is reasonable, he should be entitled to seize them, just as when he observes such things elsewhere in the lawful conduct of his duty. This latter authority is limited, however, by *Coolidge v. New Hamp.,* [403 US 443, 29 L Ed 2d 564] 91 S Ct 2022, 2040-41 (1971). The Court said that if the initial intrusion is bottomed upon a search warrant which fails to mention a particular object, though the police know its location well ahead of time and intend to seize it, then there is a violation of the express constitutional requirement of 'warrants . . . particularly describing . . . the things to be seized.' Pursuant to *Coolidge,* then, police must be much more careful about what they list. They will not now have the wide latitude they supposed existed under the plain view rule. Thus under *Coolidge* if the police expect to find evidence or contraband, or if the police could reasonably anticipate finding certain evidence or contraband, it may not be seized under the plain view rule." Proposed Oregon Criminal Procedure Code (1972).

[209]

If evidence seized in violation of ORS 133.585 is not, for that reason, inadmissible, then there is presently no practical means of enforcing the rules stated in ORS 133.585. We do not believe the legislature intended such a result. We conclude that the marijuana seized in violation of ORS 133.585 is inadmissible.

Affirmed.