## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL LEE HANSON,
*Appellant.*

## (No. 37930, CA A21187)

642 P2d 320

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant was convicted of robbery in the first degree and burglary in the first degree. ORS 164.415, 164.225. On appeal he contends the trial court erred in admitting illegally seized evidence and in improperly instructing the jury. We affirm.

On the evening of December 12, 1980, Mitchell Cobb answered a knock on the door of his residence and was greeted by a man wielding what Cobb believed to be a sawed-off, double-barreled shotgun. Cobb obeyed the gunman's order to lie on the floor. Then two of the gunman's accomplices led Cobb to the bathroom, telling him to keep his eyes closed. By the sounds of footsteps and rummaging, Cobb believed three others plus the gunman were present. One person remained with Cobb in the bathroom the entire time. He warned Cobb not to move or open his eyes, or "he would blow him away." Cobb's hands and feet were then bound and his mouth gagged, and the intruders left. Cobb freed himself and called the police. He reported a list of items stolen from the residence, including stereo equipment, records and tapes, a television, tools, a tapestry of a ship, two hunting rifles and a wallet containing his identification.

The next day, an informant told police officers that he had seen stolen property in a mobile home in Sweet Home occupied by some friends of defendant. The informant stated that in the living room he had seen "all kinds of stereo stuff," an orange crate full of records, a rifle and a shotgun and that, according to persons at the mobile home, the items had been obtained from "a guy's place in Corvallis" at gunpoint.

An application was made for a warrant to search the mobile home, based in part on the information from the informant. The affiant stated that he "reasonably suspect[ed]" that "a shotgun and all items of property listed" in the police report as taken from Cobb would be found at the mobile home. The search warrant which issued expressly authorized a search for the specific items listed by Cobb in the police report but did not specifically authorize a search for "a shotgun." In executing the search warrant, police officers recovered much of the listed property. They

also seized a sawed-off, single-barreled shotgun found in a suitcase, which also contained the stolen tapestry and Cobb's identification. Defendant, along with others present at the mobile home, was arrested.

At trial Cobb identified a photograph of the gunman who had initiated the intrusion, but he did not identify defendant as the gunman. He was not able to identify the sawed-off, single-barreled shotgun seized at the mobile home as the weapon carried by the gunman. Police officer Marshall testified that he had talked to defendant two days after the seizure and arrest. He stated that defendant described the details of the robbery which matched Cobb's description with one exception; Marshall stated that defendant told him no shotgun was involved but that the weapon used was a pipe. Marshall stated that defendant admitted he was in the bathroom with Cobb and that he warned Cobb not to move or he would blow Cobb's head off. He said defendant told him that he and his companions had met at a Sambo's restaurant prior to the robbery.

Defendant testified at trial that he and four companions had eaten hallucinogenic mushrooms on the day of the robbery and that he could not remember the events of the evening or remember talking to Officer Marshall about his participation in the robbery. He did remember being at the Sambo's Restaurant in Corvallis on December 12, although he did not remember telling Officer Marshall about the meeting. A Sambo's waitress testified that she saw defendant with four companions at the restaurant the evening of December 12, and she identified photographs of the five men. The man identified by Cobb as the gunman was one of the five.

Sheryl Stewart, who lived at the mobile home in Sweet Home with defendant's friend, testified that on the evening of December 12, defendant and four others left the residence to go to Corvallis to pick up a stereo. They returned several hours later with the items subsequently seized from the residence, but refused to tell Stewart where they had obtained them. She also testified that she had seen the sawed-off shotgun before and that she believed it belonged to the man Cobb identified as the gunman.

Defendant's first assignment is that the court erred in admitting the shotgun seized at the mobile home. Defendant argues that because the police had probable cause to believe the shotgun would be found at the mobile home, the shotgun should have been listed in the search warrant. Thus, he argues, failure to list the shotgun requires its suppression as evidence. *See State v. Plowman*, 43 Or App 25, 602 P2d 286 (1979); *State v. Weaver*, 41 Or App 201, 598 P2d 308, *rev den* 287 Or 507 (1979); ORS 133.585. The state argues that suppression would be proper only if the officers executing the search warrant had probable cause to believe they would find the shotgun. Here, although the affiant had information constituting probable cause, his information was never communicated to the searching officers. We need not decide this question, however, because we conclude that even if the court erred by admitting the shotgun, the error was harmless.

■   Because a federal constitutional error is at issue, we may affirm the conviction, despite error, only if we are " 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.' " *State v. Stilling*, 285 Or 293, 304, 590 P2d 1223, *cert den* 444 US 880 (1979) (quoting *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967)).

■   As an exhibit before the jury, the shotgun was perhaps dramatic, but because Cobb could not identify it, much of the dramatic impact was lost. In addition, Cobb identified one of defendant's companions, not defendant, as the gunman. Officer Marshall testified that defendant had admitted to him details of the robbery, including defendant's standing guard over Cobb with a pipe. Moreover, the officers were lawfully present at the mobile home in execution of the search warrant. Even if seizure of the shotgun was improper, police officers properly found the shotgun in the suitcase which contained the tapestry and Cobb's identification, and they properly testified in court as to these observations. There was strong evidence of defendant's guilt, and in the face of that evidence, the admission of the shotgun was very unlikely to have made a difference in the outcome. If admission of the shotgun was error, the error was harmless beyond a reasonable doubt.

■      Defendant's second assignment concerns a jury instruction regarding the witness Sheryl Stewart. The court gave the following instruction:

"Now, one of the witnesses who testified here today is viewed as what the law views as an accomplice. The girl who testifed this morning, whose name I don't recall, nevertheless she is as a matter of law an accomplice, which means that she could have been convicted for the same crimes. Now, the conviction can't be had on the testimony of an accomplice unless that testimony is corroborated by other evidence that tends to connect the defendant with the crime.

"The corroboration is not sufficient if it merely shows the commission of the crime or circumstances of the commission. It has to be that it shows that the defendant himself was a participant in the crime."

Defendant and the state both took exception to this instruction, which the trial court gave on its own motion. Defendant argues that the instruction was prejudicial because it suggested to the jury that if Stewart, who did not participate in the intrusion or even know about it, could be convicted of robbery and burglary, then defendant surely must be guilty as well.

We conclude that this jury intruction was at the worst harmless error. *State v. Van Hooser*, 266 Or 19, 511 P2d 359 (1973). The portion quoted focuses on the corroboration of Stewart's testimony, not on her accomplice liability. The context of the instruction makes this clear, for this instruction was given with others on the subject of evaluating different types of evidence and credibility of witnesses. The court elsewhere stressed the requirement that the state prove, beyond a reasonable doubt, each element of the crimes charged. The court also instructed on the element of intent, on aiding and abetting, on voluntary intoxication, on the lesser included offense of criminal trespass, ORS 164.245 and on others. Read as whole, in the context of the overwhelming evidence, the erroneous instruction did not prejudice defendant. *Cf. State v. Stilling, supra,* 285 Or at 300-301.

Affirmed.